## In re WILLIAM HERBERT HUNT TRUST ESTATE, Debtor.

## In re NELSON BUNKER HUNT TRUST ESTATE, Debtor.

## In re LAMAR HUNT TRUST ESTATE, Debtor.

## Bankruptcy Nos. 386–33421–HCA–11, 387–36380–HCA–11 and 387–36381–HCA–11.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Sept. 16, 1988.

L.E. Creel, III, John B. Atwood, III, Creel, Atwood & Phillips, Dallas, Tex., for William Herbert Hunt Trust Estate, debtor.

Ivan Irwin, Jr., Thomas S. Hoekstra, Shank, Irwin, Conant, Lipshy & Casterline, Dallas, Tex., for Nelson Bunker Hunt Trust Estate, debtor.

William T. Burke, Jr., Burke and Wright, Dallas, Tex., for Lamar Hunt Trust Estate, debtor.

Hugh M. Ray, Andrews & Kurth, Dallas, Tex., M.O. Sigal, Jr., Mark J. Thompson, Simpson Thacher & Bartlett, New York City, for Manufacturers Hanover Trust Co., Agent Bank of Penrod Bank Group.

William T. Neary, Dallas, Tex., U.S. Trustee for N.D. Texas.

## ORDER

### (1) CONFIRMING PLAN OF REORGANIZATION

### AND

### (2) FIXING BAR DATE FOR FILING OF ADMINISTRATIVE EXPENSE CLAIMS, CLAIMS ARISING FROM THE REJECTION OF EXECUTORY CONTRACTS, DISSOLUTION CLAIMS, DEFICIENCY CLAIMS AND APPLICATIONS FOR ALLOWANCES OF COMPENSATION AND/OR REIMBURSEMENT OF EXPENSES

HAROLD C. ABRAMSON, Bankruptcy Judge.

The Debtors, certain Banks,* Old Penrod and New Penrod (together with the Debtors, the *"Proponents"*) having proposed and filed a First Joint Consensual Plan of Reorganization under Chapter 11 of Title 11 of the United States Code (the *"Bankruptcy Code"*) on June 30, 1988, and a copy thereof (together with the schedules thereto) and of the Disclosure Statement approved by the Court on July 25, 1988 having been transmitted to all Creditors and all holders of Interests in a Debtor (or to representatives of such holders); and the Proponents having modified the First Joint Consensual Plan of Reorganization on September 16, 1988 which modifications this Court, pursuant to Section 1127 of the Bankruptcy Code and Rule 3019 of the Bankruptcy Rules, approved under a sepa-

rate order signed September 16, 1988 after a hearing (such modified version being herein referred to as the "Plan"); and confirmation hearings having been held by the Court beginning on September 8, 1988, and continuing on September 9, 15 and 16, 1988; and upon the record of the hearings and all the proceedings held before the Court in these cases; and after due deliberation, and sufficient cause appearing therefor; and

It having been FOUND and DETERMINED, after notice and a hearing, that:

A. Each Trust Estate is, and has historically been, engaged in (a) purchasing, developing and leasing commercial and other real property, (b) owning and managing royalty, overriding royalty, working and other types of oil and gas interests, and (c) holding equity interests in other enterprises related to its real property and oil and gas holdings; and as such is a Person entitled to the protection of the provisions of the Bankruptcy Code. Each of the Trust Estates have been administered by trustees acting in their fiduciary capacities and, where appropriate, in conjunction with their respective advisory boards, acting independently under the terms of their respective trust instruments.

B. Any Person required to receive notice of the hearings on the adequacy of the Disclosure Statement and confirmation of the Plan has received due, proper and adequate notice thereof. All Persons having an Interest, vested or contingent, present or future, in any Trust Estate, to the extent such Persons can be presently identified, received a copy of the Plan and Disclosure Statement and due, proper and adequate notice of the Confirmation Hearing, which notice complied with Section 115.015 of the Texas Trust Code as well as Rule 2002 of the Bankruptcy Rules. Due, proper and adequate notice and an opportunity to appear was given to all Persons with any Claim against or Interest in the Debtors. Any person who requested a copy of the voluminous exhibits to the version of the

* Capitalized terms not otherwise defined in this Order shall have the respective meanings as-  signed thereto in Schedule II to the Plan.

Plan set forth as Exhibit A to the Disclosure Statement in the manner set forth in the Disclosure Statement received a copy of such exhibits.

C. The Plan complies with the applicable provisions of the Bankruptcy Code.

D. The Proponents of the Plan have complied with the applicable provisions of the Bankruptcy Code.

E. The Plan has been proposed in good faith and not by any means forbidden by law. Each of the Proponents has been advised by counsel of its own choosing in the formulation of the Plan and the negotiation, execution and delivery of the Plan Transaction Documents and the Plan Securities to which it is a party and has made an independent decision to enter into the Plan Transaction Documents and the Plan Securities to which it is a party and to propose the Plan without any reliance on any representations, warranty, covenant or undertaking by or on behalf of any other Proponent or any Bank–Related Person. No representation, warranty, covenant or undertaking has been made by or on behalf of any Proponent or any Bank–Related Person to any other Proponent or any Affiliate in connection with the rights and obligations of such Proponent or any Affiliate except as expressly set forth in the Plan, the Plan Transaction Documents and the Plan Securities. There are no representations, warranties, covenants, undertakings or agreements by or on behalf of any Proponent or Life Beneficiary on the one hand, and any Bank–Related Person, on the other, as to the Plan, the Plan Securities or the Plan Transaction Documents except as specifically provided therein. No Bank–Related Person has any fiduciary obligation to any Debtor, Old Penrod, New Penrod or the OCS Subsidiary with respect to the Plan, the Plan Transaction Documents, the Plan Securities or otherwise, and none of the Debtors, Old Penrod, New Penrod and the OCS Subsidiary has any fiduciary obligation to any Bank–Related Person, except, in the case of each of New Penrod and the OCS Subsidiary, as set forth in the Security Documents to which it is a party. The relationship between each Debtor, New Penrod or the OCS Subsidiary on the one hand, and each Bank, on the other hand, with respect to the Credit Agreement, the Secured Notes and the Security Documents is, and is intended by each of them to be, solely that of debtor and creditor. No joint venture exists either between any Debtor, Old Penrod, New Penrod or the OCS Subsidiary and any one or more of the Banks, or among the Banks as a group. No agency relationship exists between any Bank or Bank–Related Person, on the one hand, and the Debtors, Old Penrod, New Penrod and the OCS Subsidiary, on the other hand.

F. Any payment made or to be made from property of any Debtor's estate by any of the Proponents or any Person issuing securities or acquiring properties under the Plan, for services or for costs and expenses in, or in connection with, any of these Reorganization Cases, or in connection with the Plan and incident to any of these Reorganization Cases, has been approved by, or will be subject to the approval of, the Court as reasonable (except for legal fees and expenses to be paid by New Penrod under the Plan Documents, and except for amounts which all Bank–Related Persons are indemnified by the Debtors under the Plan Transaction Documents, which the Court determines are not intended to be within the scope of Section 1129(a)(4) of the Bankruptcy Code).

G. The Proponents of the Plan have disclosed the identity and affiliations of any Person proposed to serve, after the confirmation of the Plan, as a director, officer, voting trustee or member of the Advisory Board of any Debtor, New Penrod or the OCS Subsidiary; the appointment to, or continuance in, such office of such Person is consistent with the interests of Creditors and Interestholders and with public policy. The Debtors have disclosed the identity of any insider of the Debtors that will be employed or retained by any Debtor and the nature of any compensation for such insiders.

H. With respect to each impaired class of Claims, (i) each holder of a Claim of such class has accepted the Plan, or will receive or retain under the Plan on account of such

Claim property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if each Debtor which is liable to such holder were liquidated under Chapter 7 of the Bankruptcy Code. No holder of a Secured Claim has made an election under Section 1111(b)(2) of the Bankruptcy Code.

I. Holders of Allowed Claims in Classes 3, 4, 5, 7, 8, 9, 10 and 11 have accepted the Plan within the meaning of Section 1126(c). Classes 1, 2, 6 and 12 and certain Class 3 Creditors are unimpaired within the meaning of Section 1124 and are conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code.

J. Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that:

(i) with respect to a claim of a kind specified in Section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, on the Effective Date the holder of such Claim will receive on account of such Claim cash equal to the Allowed Amount of such Claim; and

(ii) with respect to a Claim of the kind specified in Section 507(a)(7) of the Bankruptcy Code, the holder of such Claim will receive on account of such Claim either (a) cash equal to the allowed amount of such Claim or (b) deferred cash payments, over a period not exceeding six (6) years after the date of assessment of such Claim, of a value, as of the Effective Date, equal to the Allowed Amount of such Claim.

K. At least one (1) class of Claims that is impaired under the Plan has accepted the Plan, determined without including the acceptance of the Plan by any insider of the Debtor holding a Claim of such class.

L. Confirmation of the Plan is not likely to be followed by the need for further financial reorganization or liquidation of any Debtor, New Penrod or the OCS Subsidiary.

M. All fees payable under 28 U.S.C. § 1930, as determined by the Court at the hearings confirming the Plan, have been paid or the Plan provides for the payment of all such fees on the Effective Date.

N. The Disclosure Statement has been reviewed by numerous attorneys, accountants and representatives of parties in interest. The Disclosure Statement meets the requirements of Section 1125 of the Bankruptcy Code. The Debtors have filed the Disclosure Statement in good faith with reasonable care and diligence, and have not knowingly or negligently included in such Disclosure Statement any materially misleading or erroneous statements or representations. The Banks have assisted in the preparation of the Disclosure Statement in good faith and neither the Banks nor any Bank–Related Person has any responsibility for its contents.

O. The solicitation of acceptances of the Plan by the Proponents was in good faith.

P. Each of New Penrod, the Land Partnership, the Voting Trust and the Independent Trust is an "entity issuing securities under the plan" within the meaning of Section 1141(a) of the Bankruptcy Code. Each of New Penrod, the Land Partnership and the OCS Subsidiary is an "entity acquiring property under the plan" within the meaning of Section 1141(a) of the Bankruptcy Code. Each of New Penrod, the OCS Subsidiary, the Land Partnership, the Independent Trust and the Voting Trust is an "entity organized ... for the purpose of carrying out the plan" within the meaning of Section 1142(a) of the Bankruptcy Code.

Q. The Liens created on property of Old Penrod and the Debtors under the Existing Loan Documents (i) were all legal, valid and effective grants of Liens, (ii) created in favor of the Agent for the benefit of the Banks valid, perfected, first priority Liens on such property, except as described in Schedule 7 to the New Credit Agreement, and (iii) did not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or the laws of the United States or of any State.

R. The transfers of property to New Penrod, the Banks, the Voting Trust, the Independent Trust and the Land Partnership provided for in Sections 3.9 and Article IV of the Plan and in the Plan Transaction

Documents (including, without limitation, the transfer to the Agent of the Debtors' Equity Interest and the Bank Group Equity Interest upon the occurrence of a Penrod Demise Event as contemplated in the Trust Estates Agreement and the transfer of the Bank Group Equity Interest upon exercise of the Trust Estates Option as contemplated in the Trust Estates Agreement), which transfers are among the principal means of implementing the Plan, (i) are all legal, valid and effective transfers of property, (ii) vest in the respective transferees good title to such property free and clear of all Liens (other than (a) Liens in favor of the Agent for the ratable benefit of the Banks and (b) Permitted Exceptions with respect to the Land Partnership Property) and free and clear of any equity of redemption, (iii) do not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or the laws of the United States or any State, (iv) do not directly or indirectly subject the Voting Trust, the Independent Trust or any Bank–Related Person or the transferred property to any liability by reason of such transfer under the laws of the United States or of any State (including, without limitation, any theory of successor or transferee liability) and (v) in the case of the transfers of Land Partnership Property to the Land Partnership, are absolute, outright and unconditionalconveyances by the Trust Estates of all of their rights, titles and interests therein. The conveyance to the Land Partnership is, and is intended by the parties to be, a separate transaction from the grant of an option under the Purchase Option Contract; the Debtors will not have possession of, or any decision making authority with respect to the Land Partnership Property; the Debtors are receiving fair and reasonably equivalent consideration for their conveyance; and the transaction is not to be characterized as an equitable mortgage.

S. The Liens created in favor of the Agent for the benefit of the Banks under the Security Documents, which are among the principal means of implementing the Plan, (i) are all legal, valid and effective grants of Liens, (ii) create in favor of the Agent for the benefit of the Banks valid, perfected, first priority Liens on the property described in the Security Documents, except as described in Schedule 7 to the New Credit Agreement and (iii) do not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or the laws of the United States or any State.

T. (i) The Releases have been knowingly entered into by the respective Releasors.

(ii) The District Court Litigation is an extremely complex matter and its further prosecution would be very expensive for the parties thereto. There is a substantial probability that the Debtors may not succeed on the merits of their claims and defenses. *See Hunt v. Bankers Trust Co.,* 646 F.Supp. 59, 65–66 (N.D.Tex.1986). Final resolution of the District Court Litigation, including the likely prospect of appeal by the losing side, could take years.

(iii) The settlement of the District Court Litigation allows the Debtors to retain significant assets, which might have been lost if judgment was entered against the Debtors in the District Court. Further, although significant assets are being conveyed by the Debtors to the Banks absolutely and outright, the Debtors are receiving, as part of the settlement, options to repurchase those assets at stated prices, which could enable the Debtors to realize value from those assets if their values exceed sufficiently their option prices. Finally, the Debtors are being released from all other liability for Old Penrod's bank debt. These are all substantial benefits to the Debtors and their Creditors and Interestholders.

(iv) Comparison of the negative aspects of continued prosecution of the District Court Litigation with the benefits to the Debtors of settling the District Court Litigation indicates that the treatment of the Debtors' purported claims in the District Court Litigation and the execution and delivery of the Releases as called for by the Plan are fair and equitable to the Debtors and all parties-in-interest in these cases (including, without limitation, all Interestholders) and are in the best interests of the Debtors and all such parties-in-interest (in-

cluding, without limitation, all Interestholders).

U. The aggregate fair market value of the Land Partnership Property is not greater than $200 million. The gross value of all property to be transferred by Old Penrod to New Penrod under the Plan is $650,000,000, exclusive of current assets and current liabilities.

V. New Penrod and Old Penrod have agreed to make elections that the transfer value of Penrod 80, 85 and 92 shall equal the sum of the tax written down values of such rigs for U.K. tax purposes plus the accumulated losses in the U.K. applicable and currently available to Old Penrod.

W. It is essential to the implementation of the Plan that the dissolution of Old Penrod be deemed to occur on the Effective Date.

X. The Plan is fair and equitable to all parties-in-interest, including, without limitation, all holders of Claims and Interests.

Y. Due, proper and adequate notice and an opportunity for hearing was afforded all parties-in-interest in the Reorganization Cases with respect to the modifications to the version of the Plan set forth as Exhibit A to the Disclosure Statement, which modifications are contained in the version of the Plan filed on September 16, 1988. None of the modifications adversely changes the treatment of the Claim of any Creditor or the Interest of any equity security holder (or other holder of an Interest) who has not accepted in writing such modifications.

Z. All of the Proponents of the Plan have agreed to the following provisions of this Order.

IT IS HEREBY ORDERED THAT:

1. The Plan be, and the same hereby is, confirmed.

2. Subject to paragraph 3 hereof, each Debtor be, and it hereby is, discharged from all debts that arose against it before the date of entry of this Order (including, without limitation, (i) any debt based upon a guarantee of collection or payment or performance of any obligation, (ii) any clause or provision of subordination in any agreement of such Debtor, (iii) any debt of any kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, (iv) any debt for which such Debtor is liable in its capacity as a general partner in, or guarantor or surety of, Old Penrod and (v) Claims of any Debtor against any other Debtor), whether or not (a) a proof of claim based upon such a debt is filed or deemed to be filed under Section 501 of the Bankruptcy Code, (b) such Claim is allowed under Section 502 of the Bankruptcy Code, or (c) the holder of such Claim has accepted the Plan; *provided, however,* that the indemnities in favor of New Penrod and the Land Partnership provided in the Trust Estates Agreement and the Contract of Sale, respectively, and the indemnities provided for in the Plan shall not be discharged even to the extent they may relate to debts that arose before the date of entry of this Confirmation Order.

3. Nothing in this Order or the Plan shall operate as a discharge of any Debtor from Claims, obligations or liabilities to be paid or performed under the Plan, any Plan Security or any Plan Transaction Document.

4. Any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of any Debtor with respect to any debt discharged hereunder, be, and it hereby is, rendered null and void.

5. The commencement or continuation of any action, or the employment of process with respect to any debt discharged hereunder, or any act to collect, recover or offset any debt discharged hereunder, as a personal liability of any Debtor, or from properties of any Debtor, be, and it hereby is, forever enjoined.

6. The commencement or continuation by or on behalf of any holder of an Interest, any holder of a Claim, any Debtor, Old Penrod, New Penrod, the OCS Subsidiary, each party in interest or any Person acting or purporting to act by, through, under or on behalf of any of the foregoing of any action, the employment of process, or any act to assert a claim for relief against any Bank–Related Person, any Voting Trustee

or the Independent Trustee in respect of (a) any actions taken during the course of any of the Reorganization Cases, (b) the Plan, any Plan Security or any Plan Transaction Document, (c) the authorization for or the formulation, negotiation, confirmation or consummation of the Plan, any Plan Security or any Plan Transaction Documents, (d) distributions, payments or transfers made under the Plan, any Plan Security or any Plan Transaction Document, or (e) acts performed pursuant to the Plan, any Plan Security or any Plan Transaction Document, be, and it hereby is, forever enjoined. This decretal paragraph shall not prohibit or impair any Debtor, Old Penrod, New Penrod, the OCS Subsidiary, any Interestholder or any Creditor from commencing proceedings in this Court as permitted under Article VIII of the Plan to enforce, preserve and protect their respective rights and benefits under the Plan and the Plan Transaction Documents.

7. Except for proceedings brought in this Court as contemplated in Section 8.1 of the Plan, and for other proceedings permitted by Section 8.2 of the Plan or further order of this Court, each Interestholder, each Creditor, each Debtor, Old Penrod, New Penrod, the OCS Subsidiary and each other party-in-interest and any Person acting or purporting to act by, through, under or on behalf of any of the foregoing be, and they hereby are, forever enjoined from commencing any action in any court seeking to modify any term of the Plan, any Plan Security or any Plan Transaction Document or an act taken or to be taken under the Plan, any Plan Security or any Plan Transaction Document, or to interfere with the receipt and retention of any distribution or transfer of Assets made or to be made under the Plan, any Plan Security or any Plan Transaction Document or any payment or performance of obligations under the Plan, any Plan Security or any Plan Transaction Document.

8. Neither the Banks nor any Bank–Related Person has any responsibility for the contents of the Disclosure Statement. Any holder of a Claim or Interest be, and hereby is, forever enjoined from commencing any action or prosecuting any claim for relief or cause of action against any Proponent, Affiliate, Bank Affiliate or Bank–Related Person or any officer, director, employee, trustee, agent or representative of, or attorney, accountant, consultant or other person or entity retained by, any Proponent, Affiliate, Bank Affiliate or Bank–Related Person, based upon any of the statements or representations included in, or alleged omissions in, the Disclosure Statement.

9. On the Effective Date, except as otherwise provided in the Plan, any Plan Transaction Document, any Plan Security or in this Confirmation Order, all of the property of each Debtor's estate shall vest in such Debtor and shall be free and clear of all Liens, Claims and Interests.

10. The provisions of the Plan, the Plan Securities, the Plan Transaction Documents and this Confirmation Order be, and be forever afterwards, binding on each Debtor, Old Penrod, New Penrod, the OCS Subsidiary, each Creditor of one or more of the Debtors, each holder of an Interest in a Debtor, the Voting Trust, the Independent Trust, the Land Partnership and each other party in interest in any of these Reorganization Cases.

11. Each Debtor, Old Penrod, New Penrod, the OCS Subsidiary, the Interestholders, the Banks, the Agent, the Land Partnership, Hunt Properties, the Managing Agent, the Voting Trustees, the Independent Trustee, the VT Agent, the Escrow Agent and the Disbursing Agent and their respective Trustees, directors, officers, agents and attorneys be, and they hereby are, authorized, empowered and directed to carry out all of the provisions of the Plan and to perform such acts and execute and deliver the Plan Securities and the Plan Transaction Documents and such other documents as are necessary or appropriate in connection with the Plan, the Plan Securities, the Plan Transaction Documents and this Confirmation Order. Notwithstanding any contrary provision of Texas law, the dissolution, winding-up and termination of Old Penrod shall be deemed to occur on the Effective Date.

12. The Voting Trust be, and it hereby is, deemed to be validly established in accordance with the provisions of Delaware law governing the establishment of such trust; and the Voting Trustees and the VT Agent be, and hereby are, appointed to serve in accordance with the terms of the Voting Trust Agreement. The Independent Trust be, and it hereby is, deemed to be validly established in accordance with the provisions of Delaware law governing the establishment of such trust; and the Independent Trustee be, and hereby is, appointed to serve in accordance with the terms of the Independent Trust Agreement.

13. Each Bank be, and it hereby is, authorized to assign or contribute to one of its Subsidiaries or other Bank Affiliates which is a member of the Land Partnership a portion of such Bank's Claims against the Debtors in an amount equal to such Bank's Percentage of $200,000,000. Each Bank be, and it hereby is, further authorized to assign or contribute to such Subsidiary or other Bank Affiliate or to one or more additional Subsidiaries or Bank Affiliates all or a portion of the remainder of such Bank's Claims against the Debtors and rights under the Plan, and/or all or a portion of the cash, property, securities, contract rights and other consideration to be received by such Bank under the Plan. This Confirmation Order constitutes all approvals necessary under the Bankruptcy Code and Bankruptcy Rule 3001 or any other Bankruptcy Rule with respect to such assignments or contributions by any Bank to any Subsidiary or other Bank Affiliate.

14. The Land Partnership be, and it hereby is, deemed to be validly established in accordance with the provisions of Texas law covering the establishment of such partnership. The Land Partnership (and the partners therein) be, and they hereby are, authorized to take title to the Land Partnership Property and the Land Sales Payment, and each Debtor is authorized and directed to transfer title to the Land Partnership Property and make the Land Sales Payment, in accordance with the Plan and the Contract of Sale without further order of this Court.

15. All of the transfers of property of the Debtor's respective estates provided for in Sections 3.9 and Article IV of the Plan and in the Plan Transaction Documents to be made on the Effective Date be, and the same hereby are, deemed made as of the Effective Date without any further action on the part of any Debtor, Old Penrod, New Penrod, the OCS Subsidiary, any Interestholder, any Bank, the Agent, Hunt Properties, the Managing Agent, the Independent Trustee, the VT Agent or the Voting Trustees and without any requirement or filing or recording of documents of conveyance, valid and effective as of the Effective Date; *provided, however*, that, after the Effective Date and as soon as practicable, the Proponents shall cooperate to make all filings and recordings which would otherwise be required under applicable state law to give notice of such transfers and conveyances to third parties and *provided further*, that, in their reports required to be filed in this Court, pursuant to Bankruptcy Rule 2015(a)(6), on or before the thirtieth (30th) day after the Effective Date, the Debtors shall show substantial compliance with the immediately preceding proviso.

16. All of the Liens to be created under any Plan Security or Plan Transaction Document be, and the same hereby are, deemed created, valid and perfected on, and to have a first priority (except as provided in Schedule 7 to the New Credit Agreement) as of, the Effective Date, without any further action on the part of any Debtor, Old Penrod, New Penrod, the OCS Subsidiary, Hunt Properties, the Interestholders, any Bank–Related Person, the Agent, the Administrative Partner, the Independent Trustee, the VT Agent or the Voting Trustees and without any requirement of filing or recording of financing statements, mortgages or other evidence of such Liens; *provided, however*, that, after the Effective Date, the Proponents shall cooperate to make all filings and recordings which would otherwise be required under applicable state law to give notice of such Liens to third parties and *provided*

*further*, that, in their reports required to be filed in this court pursuant to Bankruptcy Rule 2015(a)(6), on or before the thirtieth (30th) day after the Effective Date, the Debtors shall show substantial compliance with the immediately preceding proviso.

17. On the Effective Date, the Plan Transaction Documents shall become effective immediately thereupon and, upon delivery to the Escrow Agent and the Disbursing Agent of a stipulation signed by counsel to the Debtors and counsel to the Agent stating that the conditions precedent specified in Section 7.3 of the Plan have occurred (or have been waived as provided in Section 7.6 of the Plan), the Escrow Agent and the Disbursing Agent shall take the actions specified in Section 7.4 of the Plan to be taken by it on the Effective Date without further act of any Person or further order of this Court. A copy of the stipulation shall be filed in this Court by counsel to the Debtors and counsel to the Agent promptly after delivery of such stipulation to the Escrow Agent and the Disbursing Agent.

18. Each Class 9 Claim be, and it hereby is, an Allowed Claim and an Allowed Secured Claim to the extent described in Section 3.9(a) of the Plan entitled to vote upon and receive distributions under the Plan. The Class 4A Secured Claim of InterFirst Funding Corporation be, and it hereby is, an Allowed Claim and an Allowed Secured Claim to the extent described in Section 3.4(a) of the Plan entitled to vote and receive distributions under the Plan. The $546,896.56 Unsecured Claim and the $335,737.06 Administrative Claim of NCNB Texas National Bank shall each be, and each hereby is, an Allowed Claim entitled to vote and receive distributions under the Plan as provided, respectively, in Sections 3.7 and 3.1 thereof.

19. (i) The execution and delivery of all of the Releases be, and hereby are, approved.

(ii) The Debtors, Old Penrod, the other plaintiffs in the District Court Litigation, New Penrod and the Banks be, and they hereby are, directed to accomplish the dismissals as specified in Section 4.14 of the Plan prior to the Effective Date.

(iii) All "Claims" (as defined in the Releases admitted into evidence at the Confirmation Hearing and released pursuant thereto) are hereby forever barred, and each Releasor and each Person on behalf of whom such Releasor has executed and delivered a Release is hereby enjoined from asserting any such released Claim.

(iv) The Releases executed by the Debtors, Placid and PBSC be, and hereby are, immediately effective and the Escrow Agent be, and hereby is, directed to release them from escrow immediately.

20. The assumption or rejection of executory contracts and unexpired leases as provided in Article V of the Plan be, and it hereby is, approved.

21. Any and all Plan Securities be, and they hereby are, deemed to have been offered and sold pursuant to Section 1145(a) of the Bankruptcy Code. None of the Plan Securities is required to be issued under an indenture pursuant to the Trust Indenture Act of 1939.

22. The issuance, transfer or exchange of any Plan Security, or the making or delivery of an instrument of transfer under this Plan, may not be taxed under any law imposing a stamp tax, transfer tax or other similar tax.

23. All payments and other distributions to be made by a Debtor under the Plan shall be timely and proper if mailed by first class mail on or before the distribution date set forth in the Plan to either the address listed in such Person's notice of appearance (as amended) in such Debtor's Bankruptcy Case or the address listed in such Person's proof of claim filed in such Debtor's Bankruptcy Case, or, if neither of the foregoing is applicable, the last known address of the Persons entitled thereto.

24. Any monies to be distributed by a Debtor pursuant to the Plan and remaining unclaimed on the date one (1) year after the date of the entry of this Confirmation Order (the "Reversion Date") shall revert to such Debtor, except that any monies to be distributed within ninety (90) days prior to

the Reversion Date or subsequent to the Reversion Date shall revert to such Debtor only after such monies have remained unclaimed for a period of at least ninety (90) days following such date.

25. Any Person alleging Claims arising from the rejection of any executory contract or unexpired lease pursuant to Article V of the Plan or from the dissolution of Old Penrod shall file a proof of claim with the Court within thirty (30) days after the rejection of such executory contract or unexpired lease becomes effective, or after the dissolution of Old Penrod, as the case may be, or be forever barred from asserting any claim therefor against any Debtor, its estate, or otherwise.

26. Any Person asserting a Deficiency Claim shall file a proof of claim with the Court within thirty (30) days of the determination by this Court of the Allowed Amount of its Secured Claim or be forever barred from asserting any claim therefor against any Debtor, its estate or otherwise.

27. Any Person alleging entitlement to payment from any Debtor's estate of an administrative expense of the kind specified in Section 507(a)(1) of the Bankruptcy Code shall file a proof of claim with the Court within ninety (90) days after the date of entry of this Confirmation Order or be forever barred from asserting any claim therefor against such Debtor, its estate or otherwise; provided that NCNB Texas National Bank, having a $335,737.06 Administrative Claim which has been found herein to be an Allowed Claim, shall not be required to file any additional proof of claim hereunder.

28. Within ten (10) days after the date of entry of this Confirmation Order, each Debtor shall mail to all parties in interest in its Reorganization Case notice of entry of this Confirmation Order, together with notice of the last day for filing administrative expense Claims, Dissolution Claims, Deficiency Claims, Claims arising from the rejection of executory contracts and applications for allowances of compensation and/or reimbursement of expenses.

29. The stay in effect in each Debtor's Reorganization Case pursuant to Section 362(a) of the Bankruptcy Code and any stay entered in each such case by this Court under Section 105 of the Bankruptcy Code be, and they hereby are, dissolved and of no force or effect.

30. Each holder of a Plan Security be, and each hereby is, authorized to exercise the remedies set forth in such Plan Security and, to the extent applicable, set forth in the Plan Transaction Documents or other collateral security documents securing such Plan Securities, all in accordance with their respective terms, and any and all of such remedies may be exercised without need for any application to or further order of this Court or any other court; and except as permitted by the Plan, each of the Debtors, Old Penrod, New Penrod, the OCS Subsidiary, each holder of an Interest in a Debtor, each Bank–Related Person and every other party in interest be, and hereby is, forever enjoined from taking any action to prevent or otherwise interfere with the exercise of such remedies.

31. (a) Subject to the limitations set forth in the following paragraph 31(b), the Court shall retain exclusive jurisdiction over each of these Reorganization Cases, to the extent provided in the Plan, including exclusive jurisdiction over all controversies, disputes and suits which may arise in connection with the interpretation or enforcement of the Plan, any Plan Security or any Plan Transaction Document or in connection with the enforcement of remedies under the Plan, any Plan Security or any Plan Transaction Document.

(b) In the interest of comity and respect for the law and the courts of the State of Delaware and the familiarity of such courts with the subject matter encompassed by the Voting Trust Agreement and the Independent Trust Agreement, the Court shall abstain from, and no jurisdiction shall be retained concerning, the matters which the Proponents have agreed, in Article 28 of the Voting Trust Agreement and Section 26 of the Independent Trust Agreement, shall be within the exclusive jurisdiction of the Court of Chancery of that state. Further, no provision of the Plan or this Confirmation Order shall give, or be construed to

**182**

give, this Court the power to issue any order which (without the consent of the affected party or parties) modifies or impairs any right, title, interest, privilege, or remedy expressly provided or reserved under the Plan, any Plan Security, any Plan Transaction Document or this Confirmation Order.

32. "Substantial consummation" of the Plan shall be deemed to occur on the Effective Date. "Consummation" of the Plan within the meaning of Rule 2015(a)(7) of the Bankruptcy Rules and Local Bankruptcy Rule 2015 shall not be deemed to occur until, and these Reorganization Cases shall not be deemed fully administered within the meaning of Section 350(a) of the Bankruptcy Code or the Bankruptcy Rules until, and no final decree closing these Reorganization Cases shall be entered until, the Secured Notes issued by New Penrod under the New Credit Agreement shall have been paid in full and the Land Partnership shall have terminated in accordance with the last sentence of Section 8.01 of the Land Partnership Agreement. Until a final decree has been entered and these Reorganization Cases have been closed, as provided herein, each of the Debtors, shall be, and hereby is, enjoined from filing a voluntary case under the Bankruptcy Code. Until these Reorganization Cases are closed, any Proponent (without reference to Section 9.8 of the Plan) may commence a proceeding in this Court in respect of any matter as to which jurisdiction has been retained herein. The retention of jurisdiction provided for in the Plan and in this Confirmation Order shall be exclusive (except as provided in Article 28 of the Voting Trust Agreement and Section 26 of the Independent Trust Agreement) so as to preserve for the Proponents the benefits of the Consensual Plan, subject to this Court's right, under Section 305 of the Bankruptcy Code or 28 U.S.C. § 1334(c), to abstain as to all or part of any such proceeding.

33. In the event any of these Reorganization Cases shall be inadvertently deemed closed or fully administered before all the Secured Notes issued by New Penrod under the New Credit Agreement shall have been paid in full and the Land Partnership shall have terminated in accordance with Article VIII of the Land Partnership Agreement, then such Reorganization Case may be reopened pursuant to Section 350(b) of the Bankruptcy Code and Rule 5010 of the Bankruptcy Rules for cause.

34. The Banks shall not have any responsibility for the treatment of any other Creditors under the Plan, nor for any of the statements, actions or omissions of any Debtor, Old Penrod or New Penrod with respect thereto.

35. The reports required by Bankruptcy Rule 2015(a)(6) shall be filed by the Debtors (a) thirty days after the Effective Date and (b) annually thereafter until these cases are closed as provided in paragraph 32 hereof. Such reports shall contain adequate information concerning progress made in the final and complete consummation of the plan.

36. Messrs. Marvin K. Hambrick, John P. Harbin and Charles L. Blackburn be, and each hereby is, authorized and approved to serve as Voting Trustee of New Penrod in accordance with the Plan, the Voting Trust Agreement and the other Plan Transaction Documents.

37. Each Trust Estate be, and it hereby is, authorized to enter into indemnification arrangements and/or covenants not to sue with the Voting Trustees on such terms as may be mutually satisfactory to the Trust Estates and the Voting Trustees.

38. Each Trust Estate be, and it hereby is, authorized and directed to execute and deliver to The First National Bank of Chicago, The Royal Bank of Canada, Bank of America NT & SA and Chemical Bank the indemnities provided for in Section 4.14(e)(i) of the Plan on the Effective Date.

39. Each Trust Estate be, and it hereby is, authorized and directed to execute and deliver the Plan Transaction Documents provided for in Section 4.14(e)(ii) of the Plan at the time a plan of reorganization for Placid is confirmed.

40. The modifications contained in the version of the Plan filed on September 16, 1988 be, and they hereby are, deemed accepted by all Creditors and Interestholders

who previously accepted (or were conclusively presumed by Section 1126(f) of the Bankruptcy Code to have accepted) the version of the Plan set forth as Exhibit A to the Disclosure Statement.

41. This is a core proceeding under 28 USC § 157(b)(2)(A), (L) and (O).