906 F.2d 1468
 59 USLW 2044, 23 Collier Bankr.Cas.2d 380,
Bankr. L. Rep. P 73,505
 Lewis A. PAUL, Plaintiff,
v.
T. Conrad MONTS, Defendant,
Donald W. BOSTWICK, Trustee of International Plastics, Inc.,
Plaintiff-Appellant,
v.
TRAVENCA DEVELOPMENT CORPORATION, also known as
Transnational Venture-Capital Development Corporation;
Titan Energy Co., Ltd.; T. Conrad Monts; the Southwest
National Bank; Southern Investors Management Co., Inc.;
Farmers Home Administration, Defendants-Appellees.
 No. 89-3090.
 United States Court of Appeals,
Tenth Circuit.
 June 28, 1990.
Rehearing Denied Aug. 21, 1990.
 
 Donald W. Bostwick of Adams, Jones, Robinson and Malone, Wichita, Kan., for plaintiff-appellant.
 Robin B. Moore, Asst. U.S. Atty., D. Kan., Thomas V. Murray of Barber, Emerson, Springer, Zinn & Murray, Lawrence, Kansas, Warren G. Jones of Malone, Dwire and Jones, Wichita, Kan., (Benjamin L. Burgess, Jr., U.S. Atty., D. of Kan., Wichita, Kan., with them on the brief), for defendants-appellees.
 Before BRORBY and EBEL, Circuit Judges, and JOHNSON,* District Judge.
 PER CURIAM.
 
 
 1
 This case presents the issue of whether a failed Chapter 11 reorganization plan gives rise to a cause of action which the Chapter 7 trustee can enforce against proposed participants to the plan who were not themselves creditors and who did not acquire property under the plan. The United States District Court for the District of Kansas granted summary judgment for the defendants, holding that the defendants had not contractually committed to the plan and that, even if they had, the debtor-in-possession (and the Chapter 7 trustee as successor in interest) was estopped to assert the claim against the defendants. Finally, the district court held that it would not employ a separate cause of action for the trustee and that the exclusive remedies for any breach of the plan were contained in the enforcement and modification provisions governing Chapter 11 plans of reorganization. Because we hold (1) that there is a genuine dispute over material facts concerning whether the defendants had entered into a binding contract with the debtor-in-possession, (2) that the defendants did not establish the absence of a genuine dispute of material facts concerning its estoppel defense, and (3) that the enforcement and modification provisions of the Bankruptcy Code pertaining to Chapter 11 plans of reorganization do not preempt a claim for breach of contract premised on the plan of reorganization, we reverse and remand for further proceedings.
 
 
 2
 The material facts are largely undisputed. The debtor corporation, International Plastics, Inc. (IPI), was in the business of packaging fluorocarbon products and refrigerant gases. IPI had obtained two loans totalling $6,000,000.00 from Southwest National Bank (Bank), secured by IPI property. Ninety percent of this indebtedness was guaranteed by the Farmers Home Administration (FmHA). All or substantially all of the loans had been purchased by Southern Investors Management Company, Inc. (SIMCO).
 
 
 3
 On March 18, 1980, IPI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On July 21, 1980, after two previous versions had been filed, IPI filed its second amended plan of reorganization, which provided that Titan Energy Co., Ltd. (Titan), a wholly owned subsidiary to be formed by defendant Travenca Development Corporation (Travenca), would assume IPI's entire obligation to the FmHA and would provide $2,500,000.00 of new capital. In return for this assumption of indebtedness and infusion of capital, Travenca (or Titan) would obtain fifty-one percent of IPI common stock, 175,000 shares of preferred stock, title to IPI's packaging plant, and a ninety-nine year lease of a ten-acre portion of IPI's real property. It was intended that IPI have $1,360,000.00 as working capital for operation of its fluorocarbon packaging facility. The proposed plan further provided that when Titan assumed IPI's $6,000,000.00 indebtedness, the Bank would transfer its mortgage for these loans to assets to be thereafter acquired by Titan, which would thus free all of IPI's assets under the proposed plan. On August 19, 1980, the day before the confirmation hearing, the FmHA set forth thirteen conditions to be satisfied prior to the Bank's transferring its security in IPI property to assets subsequently to be acquired and developed by Titan.
 
 
 4
 On August 20, 1980, a hearing on confirmation of the second amended plan of reorganization was held. In deposition testimony, both the attorney for IPI and the attorney for the Bank indicated that, before the hearing, Travenca's representatives knew of the new FmHA conditions and acquiesced to their inclusion in the overall plan. During the confirmation hearing, itself, T. Conrad Monts, president of Travenca, stated that under any condition, either Travenca or he, personally, would pay the $2,500,000.00 to IPI in exchange for stock. The FmHA requirements were neither introduced into evidence nor mentioned at the hearing. Mr. Monts indicated that he understood one of Travenca's contractual obligations under the confirmed plan to be assumption of IPI's debt, but no mention was made of FmHA's new conditions. On September 2, 1980, the bankruptcy court entered an order confirming the second amended plan of reorganization.[1] On September 3, 1980, SIMCO informed Mr. Monts of thirteen additional conditions it would require before the loan agreement envisioned by the plan could be approved.
 
 
 5
 After the plan was confirmed, the parties began to disagree regarding obligations under the plan and responsibility for implementation. The parties made several proposals to modify the plan but no confirmed plan was ever implemented. In January of 1981, the Bank moved to implement the plan pursuant to 11 U.S.C. Sec. 1142(b). IPI opposed this motion, apparently believing that a modified version of the plan which was then being considered by the parties might have a greater chance of success. Finally, on April 17, 1981, the Bank filed a motion to convert the IPI Chapter 11 proceeding to a Chapter 7 liquidation bankruptcy, which the bankruptcy court approved on April 27, 1981. IPI did not oppose the Bank's motion. In its order, the bankruptcy court found that IPI did not implement the plan due to the failure of Travenca and Monts to satisfy their obligations under the plan. A Chapter 7 trustee was then appointed, and IPI's assets were substantially liquidated without objection from IPI or the bankruptcy court.
 
 
 6
 In December 1981, the Chapter 7 trustee, plaintiff here, filed a declaratory judgment action in bankruptcy court to determine if any of the defendants had breached their respective obligations under the failed plan.[2] The trustee's amended complaint also sought damages from defendants.[3]
 
 
 7
 Subsequent to a rather complex procedural history, the details of which are not relevant to this appeal, the district court granted Travenca's motion for summary judgment. Paul v. Monts, 99 B.R. 59 (D.Kan.1989). "We will affirm a grant of summary judgment if it is clear from the record that there are no genuine issues of material fact and the [moving party is] entitled to judgment as a matter of law." Willner v. Budig, 848 F.2d 1032, 1033-34 (10th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989). This court "must read the record in the light most favorable to the nonmoving party." Burnette v. Dresser Indus., Inc., 849 F.2d 1277, 1284 (10th Cir.1988); Lindley v. Amoco Prod. Co., 639 F.2d 671, 672 (10th Cir.1981). Conclusions of law by the district court are reviewable by this court de novo. In re Heape (Heape v. Citadel Bank), 886 F.2d 280, 282 (10th Cir.1989).
 
 
 8
 We address first whether Travenca is bound by the terms of the confirmed reorganization plan. Section 1141 of the Bankruptcy Code details the effect of confirmation of a reorganization plan. 11 U.S.C. Sec. 1141(a) provides in pertinent part:
 
 
 9
 [T]he provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.
 
 
 10
 While it is clear that the debtor and its creditors are bound by the plan, it is less certain that Travenca, as a third party investor in the potential reorganization, was bound by the plan.[4] "The general rule is that a confirmed plan of reorganization is binding on the debtor and other proponents of the plan." In re Garsal Realty, Inc. (Garsal Realty, Inc. v. Troy Sav. Bank), 39 B.R. 991, 994 (N.D.N.Y.1984). In fact, confirmation of a plan also binds creditors and other parties in interest even if such entities have not accepted the plan. In re St. Louis Freight Lines, Inc., 45 B.R. 546, 551 (Bankr.E.D.Mich.1984). "[A] party in interest ... is bound by the terms of the plan when confirmed, even if the plan ultimately provides it with less than that to which it is otherwise legally entitled." Id. at 552. A review of the case law and the bankruptcy provisions, however, has failed to provide a definition of "proponents of the plan," or "parties in interest." "Interest" is not defined by the Code but, as used, the term includes the ownership interest of the individual debtor in his property, the interest of equity security holders, and the interest of general partners in a debtor partnership. 5 Collier on Bankruptcy p 1141.01 n. 12 (15th ed. 1989). We found no authority to support the proposition advanced here by the trustee that Travenca was bound by the terms of the plan. While the plan envisioned that Travenca would ultimately "acquire property under the plan," that vision was never implemented by the parties. Upon confirmation, all property of the estate vested in the debtor. 11 U.S.C. Sec. 1141(b). The debtor here had not conveyed any property to Travenca. A fair reading of section 1141(a) provides that Travenca was not bound by the plan under section 1141(a) and would not be bound until it acquired property thereunder or unless it agreed to be bound.
 
 
 11
 In only two cases have we found even a brief reference identifying an entity as one which would be "acquiring property under the plan," and in both cases the entities so acquiring had entered into separate pre-plan agreements with the debtor providing for the transfer of the subject property from the estate to the acquiring entity.
 
 
 12
 In In re William Herbert Hunt Trust Estate, 92 B.R. 172, 175 (Bankr.N.D.Tex.1988), the court, in evaluating a proposed plan for compliance with statutory requirements, noted that three entities involved in the reorganization were entities acquiring property under the plan. At least two, if not all three, of the property-receiving entities were parties to the plan transaction documents. Id. at 173-74. Although the court did not elaborate, these documents may have bound the entities to acquire the estate property. There are no such pre-plan agreements in this case.
 
 
 13
 In the only other relevant case construing the language at issue, the court construed a confirmation plan which provided that title to the debtor's assets would transfer to the plaintiff on the distribution date, as defined in the plan. Kal-O-Mine Industries, Inc. v. Camp (In re Lumpkin Sand & Gravel, Inc.), 104 B.R. 529, 532 (Bankr.M.D.Ga.1989), aff'd, 111 B.R. 370 (M.D.Ga.1990). The plaintiff, Kal-O-Mine Resources, Inc., claimed to be the owner of property pursuant to a confirmed Chapter 11 plan. The defendant claimed still to be the owner because the distribution date recited in the plan had not yet occurred. The court, quoting 11 U.S.C. Sec. 1141(a), noted that all parties in the lawsuit were bound by the confirmed plan. Id. at 540-41. The court did not specifically identify Kal-O-Mine as an "entity acquiring property under the plan." It did note, however, that eight months before confirmation of the plan, Kal-O-Mine had executed an agreement to acquire one hundred percent ownership and control of the debtor. Id. at 532, 541. Again, as in Hunt, the parties had formally executed documents embodying their intent that a specific entity was to acquire property upon reorganization, thus leading to the conclusion that those entities would be bound by the subsequent plan. Here, there is no such clear evidence that Travenca agreed to acquire property pursuant to the terms of IPI's plan.
 
 
 14
 While section 1141 does not bind Travenca, this conclusion does not mean that, upon the proper evidentiary showing, Travenca could not be bound under general contract law.
 
 
 15
 Section 367(1) [the predecessor in the Bankruptcy Act to section 1141(a) ] does not refer to the situation where the plan provides for payments to be made to creditors in the future by a third person, without any written evidence of indebtedness to be given to creditors. In that situation, the obligation of the third party to make the payments, assuming he had agreed to make them, is a valid one by which he is bound under ordinary contract principles.
 
 
 16
 9 Collier on Bankruptcy p 9.25 (14th ed. 1978).[5] See also In re Air Center, Inc., 48 B.R. 693, 695 (Bankr.W.D.Okla.1985). The district court in the instant case found, upon summary judgment, that the plan did not represent a contract between the parties. Order at 7. It based this conclusion on evidence that so many outstanding conditions existed to the transfer of IPI's major loans and most of its assets to Titan, that no agreement on this key term of the transaction existed and that therefore no contract existed.
 
 
 17
 We find, however, that there is evidence in the record that Travenca, either in the person of its attorney, Mr. Berger, or its president, Mr. Monts, may have agreed to be bound by the terms of the plan despite the eleventh-hour conditions inserted by the FmHA and later by SIMCO. Mr. Dwire, attorney for the Bank, testified in deposition that he had met with Mr. Berger and the debtor's attorney, Mr. Bauer, prior to the confirmation hearing, and that both men indicated that they had no problems with the additional conditions required by the FmHA. Doc. 36, Vol. II, Dwire deposition at 60-64.
 
 
 18
 Mr. Bauer, the attorney for IPI, testified in deposition that Mr. Monts had assured him that the FmHA conditions would either be satisfied or "negotiated out of." Doc. 32, Vol. II, Bauer deposition, p. 57. A reasonable jury could conclude that if Mr. Monts could not alter the position of the FmHA through negotiation, he was prepared to comply with their requirements.
 
 
 19
 Mr. Monts testified at the confirmation hearing that he understood "absolutely" that Travenca would be obliged, upon confirmation, to pay IPI a total of $2,500,000.00 for the fifty-one percent of the common stock and 175,000 shares of preferred stock. Transcript of proceedings held on August 20, 1980, United States Bankruptcy Court D. Kan., p. 68. He further testified that he was willing to "take good faith efforts to resolve or satisfy" the FmHA conditions. Id. at 71. When asked whether there were any conditions under which the $2,500,000.00 would not be received by IPI, Mr. Monts answered in the negative.
 
 
 20
 We hold that this evidence raises a genuine issue of material fact as to whether Travenca was only agreeing to negotiate toward a workable plan to rescue IPI or whether it firmly intended to participate, notwithstanding the last minute conditions. Whether the conditions made a critical difference to Travenca's ability or willingness to participate in the reorganization is an issue of material fact which should not have been disposed of on a motion for summary judgment.
 
 
 21
 The district court found that, even if an enforceable contract did exist, the trustee's claim would be barred by estoppel. The trustee, as successor to the debtor in possession, is bound by his predecessor's authorized actions. Feldman v. Trans-East Air, Inc., 497 F.2d 352, 355 (2d Cir.1974); In re Nashville White Trucks, Inc. (Olsen v. Deutscher), 22 B.R. 578, 584 n. 7 (Bankr.M.D.Tenn.1982). When asserting rights of action against another, the bankruptcy trustee has no greater rights than the debtor has. In re Gebco Inv. Corp., 641 F.2d 143, 146 (3d Cir.1981). "The trustee is ... subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor." 2 Collier on Bankruptcy p 323.02 (15th ed. 1989). A litigant is required to be consistent in his conduct. He may not maintain a position regarding a transaction wholly inconsistent with his previous acts in connection with that same transaction. Robertson v. Ludwig, 12 Kan.App.2d 571, 752 P.2d 690, 697-98 (1988) (citing Browning v. Lefevre, 191 Kan. 397, 400, 381 P.2d 524 (1963)), rev'd on other grounds, 244 Kan. 16, 765 P.2d 1124 (1988).
 
 
 22
 In the course of this bankruptcy proceeding, IPI took several actions which the district court identified as inconsistent with the position the trustee now espouses. First, IPI never moved for implementation of the plan under 11 U.S.C. Sec. 1142(b); second, IPI opposed the Bank's motion for implementation in the apparent hope that an alternate plan would gain approval; third, IPI did not oppose the Bank's motion to convert the case to a liquidation under Chapter 7; and fourth, IPI did not contest the liquidation of its assets in direct contradiction to the plan.
 
 
 23
 In addition to inconsistent conduct, however, Travenca must also demonstrate a detrimental change in its position as a result of reasonable reliance on that conduct in order to maintain the defense of estoppel.[6]
 
 
 24
 "One who asserts an estoppel must show some change in position in reliance on the adversary's misleading statement." In re Morgan, 219 Kan. 136, 137, 546 P.2d 1394, 1395 (1976).
 
 
 25
 "Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc., 221 Kan. 523, 527, 561 P.2d 792, 795 (1977).
 
 
 26
 Harvester, Inc. v. Goodyear Tire & Rubber Co., 4 Kan.App.2d 363, 606 P.2d 498, 499-500 (1980). See also Walker v. Ireton, 221 Kan. 314, 559 P.2d 340, 345-46 (1977); R.S. v. R.S., 9 Kan.App.2d 39, 670 P.2d 923, 926 (1983).
 
 
 27
 Neither the district court, nor either party in its brief, nor our review of the record has identified any detrimental change in Travenca's position in reasonable reliance upon IPI's conduct. We find this lack of evidence of reliance fatal to Travenca's motion for summary judgment. "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, taken with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Estoppel is an affirmative defense upon which the defendant has the burden of proof. North River Ins. Co. v. Aetna Fin. Co., 186 Kan. 758, 352 P.2d 1060, 1062 (1960). "[W]here the moving party has the burden--the plaintiff on a claim for relief or the defendant on an affirmative defense--his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984) (emphasis omitted)). Because defendant Travenca's showing here is totally devoid of any evidence on an essential element of the proffered affirmative defense of estoppel, it was error for the district court to hold that the trustee would be estopped as a matter of law.[7]
 
 
 28
 Finally, we address whether, as a matter of law, a debtor-in-possession, or a successor Chapter 11 trustee, has a cause of action against an anticipated participant who has breached obligations under a plan of reorganization. The district court's ruling on this issue was couched in terms of whether such a cause of action may be implied from the Bankruptcy Code. Paul v. Monts, 99 B.R. at 63-65. However, the rationale for the court's ruling that no such cause of action could be implied was that the statutory remedies under the Bankruptcy Code should be regarded as exclusive. Appellant argues that his claim should not be analyzed as an implied cause of action, because he does not seek to imply a cause of action from any provision of the Bankruptcy Code. Instead, he is seeking to enforce provision of the plan of reorganization under a contract theory. Thus, although we agree with the district court that there is no private cause of action here to be implied from the Bankruptcy Code, the focus of our analysis must be whether the remedies provided in the Bankruptcy Code for enforcing a Chapter 11 plan of reorganization are exclusive, such that the trustee's asserted cause of action, however denominated, is preempted. We hold that it is not.
 
 
 29
 "State law may be preempted by an express congressional statement, by federal occupation of the field, or by direct conflict with federal law." Integrity Management Int'l, Inc. v. Tombs & Sons, Inc., 836 F.2d 485, 487 (10th Cir.1987) (citing Louisiana Pub. Serv. Comm'n v. Federal Communications Comm'n, 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986)). After applying the factors identified in Integrity, we find no federal preemption of this cause of action.
 
 
 30
 There is no indication from either the Code itself or from legislative history of any intent by Congress relative to the question of civil remedies for parties disappointed by the failure of a reorganization plan. Congressional intent, therefore, will not serve as a basis for preempting this common law cause of action.[8]
 
 
 31
 While we acknowledge that the states may not regulate the operation of the bankruptcy laws, there has been no congressional pronouncement regarding whether the states may rely on conduct during the negotiation of a Chapter 11 reorganization plan as a basis for a state breach of contract claim. Cf. Integrity, 836 F.2d at 488 n. 5 (no indication from Congress regarding "whether states may use a violation of the federal SBA standards as evidence of violations of state created causes of action").
 
 
 32
 It is well established that federal bankruptcy law preempts state law but only to the extent that the state law conflicts with the federal law. Stellwagen v. Clum, 245 U.S. 605, 613, 615, 38 S.Ct. 215, 217, 62 L.Ed. 507, 511 (1918); Johnson v. First Nat'l Bank, 719 F.2d 270, 273 (8th Cir.1983), cert. denied, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). In fact, the common law of the various states provides much of the legal framework for the operation of the bankruptcy system. "Where the Bankruptcy Code is silent, and no uniform bankruptcy rule is required, the rights of the parties are governed by the underlying non-bankruptcy law." In re Pascucci (Mortgage Guar. Ins. Corp. v. Pascucci), 90 B.R. 438, 442 (Bankr.C.D.Cal.1988). The underlying creditors' rights asserted in bankruptcy proceedings are creatures of state law. In re Elcona Homes Corp., 863 F.2d 483, 486 (7th Cir.1988). And while the Bankruptcy Code defines what interests of the debtor may become property of the estate, it is nonbankruptcy law that defines the scope and existence of those interests. In re Farmers Markets, Inc. (California v. Farmers Markets, Inc.), 792 F.2d 1400, 1402 (9th Cir.1986). Thus, because preemption is only partial, it cannot be said that Congress has intended to "occupy the field" leaving nothing to state law.
 
 
 33
 We turn then to whether allowing a state law based breach of contract action in this case "stands as an obstacle to the accomplishment and execution of the full objectives of Congress." Louisiana Pub. Serv. Comm'n, 476 U.S. at 368-69, 106 S.Ct. at 1898, 90 L.Ed.2d at 382. We have been unable to find a case, and none has been cited in the briefs, in which a Chapter 7 trustee has asserted a breach of contract claim against one of the anticipated participants in a failed Chapter 11 reorganization plan. Other causes of action, however, are routinely recognized as property of the Chapter 7 estate as defined in 11 U.S.C. Sec. 541 (1988).[9] We find that allowing the trustee to bring a breach of contract action in these circumstances would not conflict with the "full objectives of Congress."
 
 
 34
 We are aware of the alternative Code provisions cited by the district court which may provide other avenues of relief to persons disappointed by the failure of a reorganization plan.[10] The availability of alternative remedies within the Code, however, does not persuade us that those remedies are exclusive. See Bizzell v. Hemingway, 548 F.2d 505, 507 (4th Cir.1977) (resort to section 386 of the Bankruptcy Act, providing for the setting aside or modification of an arrangement procured by fraud, is ordinary procedure but section does not provide exclusive remedy); In re Boissonnault, 415 F.2d 1371, 1373 (1st Cir.1969) (provision in Bankruptcy Act for setting aside discharge in case of fraud is not a "limiting provision"); In re Ernst, 45 B.R. 700, 703 (Bankr.D.Minn.1985) (postconfirmation retention of jurisdiction by the bankruptcy court is not exclusive with respect to the default of a debtor under a confirmed plan or the remedies available to the creditor, thus allowing creditor to proceed with foreclosure); In re Paradise Valley Country Club, 31 B.R. 613, 615 (D.Colo.1983) (bankruptcy court jurisdiction not exclusive to determine rights and liabilities under a lease assumed by the debtor pursuant to the plan).
 
 
 35
 In summary, the provisions in the Bankruptcy Code identified by the district court do not preempt the trustee's cause of action for breach of contract. The Code itself and legislative history are silent on the question. Except where state law would directly conflict with the federal bankruptcy provisions, there is no legislative history or case law to support a finding that the federal law was intended by Congress to "occupy the field," nor does allowing this cause of action conflict with the purposes and objectives of the bankruptcy laws.
 
 
 36
 Because we hold (1) that there is a genuine dispute over material facts concerning whether Travenca had entered into a binding contract with the debtor-in-possession, (2) that Travenca did not establish the absence of a genuine dispute of material facts concerning its estoppel defense, and (3) that the enforcement and modification provisions of the Bankruptcy Code pertaining to Chapter 11 plans of reorganization do not preempt a claim for breach of contract premised on the plan of reorganization, we REVERSE the judgment of the United States District Court for the District of Kansas and REMAND this case for further proceedings consistent with this opinion.[11]
 
 
 
 *
 Honorable Alan B. Johnson, District Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 [1]
 The copy of the plan included in the record on appeal provides only one signature line, that for debtor's attorney. The copy is unsigned. There is nothing in the Bankruptcy Rules or in the local rules for the Bankruptcy Court for the District of Kansas requiring the signature of a potential participant in the Plan and, indeed, no such copy of the plan signed by Mr. Monts or by Travenca has been identified for us
 
 
 [2]
 Defendant SIMCO has since filed its own petition in bankruptcy and is no longer a party to this action. The FmHA and the Bank are still parties but the trustee's arguments on appeal are not directed to their actions. Defendants Travenca, Titan, and Monts are hereafter collectively referred to as "Travenca"
 
 
 [3]
 In his brief the trustee argues that a confirmed plan has characteristics of both a contract and a judgment and that, therefore, his cause of action is tantamount to an action to enforce a judgment of the bankruptcy court. While a confirmed plan functions as a judgment with regard to those bound by the plan, Bizzell v. Hemingway, 548 F.2d 505, 507 (4th Cir.1977), we think the claim here is more analogous to a contract claim. Although the bankruptcy court does approve reorganization plans, the essence of that action is to authorize the debtor to enter into the plan and to approve the proposed financial restructuring. See In re Food City, Inc., 110 B.R. 808, 810 n. 2 (Bankr.W.D.Tex.1990). A third party in the position of Travenca here has not submitted to the jurisdiction of the bankruptcy court and is simply dealing with the matter on a contractual level
 
 
 [4]
 There is no indication in the record that Mr. Monts or Travenca were creditors of IPI
 
 
 [5]
 This observation in Collier on Bankruptcy (14th ed.) is the closest allusion we have found to the issue treated here. No cases were cited by Collier to support its opinion but we find it to parallel our own. (This opinion is not contained in the comments to section 1141(a) in the fifteenth edition of Collier on Bankruptcy.)
 
 
 [6]
 Under Kansas law the doctrine of judicial estoppel, which would preclude the trustee from advocating a position in this litigation inconsistent with a position taken by the debtor in the earlier confirmation action, would also require evidence that Travenca had changed its position in reliance on IPI's earlier stance. McClintock v. McCall, 214 Kan. 764, 522 P.2d 343, 346 (1974)
 
 
 [7]
 Because of our disposition of this case, we express no opinion as to whether the conduct identified by the district court is sufficient to estop the trustee
 
 
 [8]
 Congressional silence will not be presumed to mandate preemption. On the contrary, "[i]t will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intent to do so." Los Alamos School Bd. v. Wugalter, 557 F.2d 709, 714 (10th Cir.), cert. denied, 434 U.S. 968, 98 S.Ct. 512, 54 L.Ed.2d 455 (1977)
 
 
 [9]
 11 U.S.C. Sec. 541(a) provides in pertinent part:
 The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
 (1) ... [A]ll legal or equitable interests of the debtor in property as of the commencement of the case.
 
 
 [10]
 These remedies include filing of a motion to compel implementation of a confirmed plan under 11 U.S.C. Sec. 1142(b); attempting to modify the plan under 11 U.S.C. Sec. 1127(b); or converting the proceeding to one under Chapter 7 pursuant to 11 U.S.C. Sec. 1112
 
 
 [11]
 We recognize that if the district court on remand finds an enforceable contract between these parties, the determination of a proper remedy will be difficult at best. We note that most of the problems addressed in this protracted and expensive litigation could have been avoided if the debtor in possession had moved for an order to show cause when he realized that the plan would not be consummated