In re Fred T. HILLER, III, d/b/a Hiller Properties, Hiller Construction and Hiller Real Estate, Debtors.

Michael BLUMENTHAL, Plaintiff,

v.

H. Christopher CLARK, Chapter 7 Trustee for the Estate of Fred T. Hiller, III, d/b/a Hiller Properties, Hiller Construction and Hiller Real Estate, Defendants.

Bankruptcy No. 88 B 05775 E.
Adv. No. 91 2039 PAC.

United States Bankruptcy Court,
D. Colorado.

July 28, 1992.

John Spillane, Deutsch, Spillane & Reutzel, P.C., Englewood, Colo., for plaintiff.

Elizabeth J. Greenberg, Elizabeth J. Greenberg, P.C., Denver, Colo., for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

PATRICIA A. CLARK, Bankruptcy Judge.

This matter is before the Court upon the motion of H. Christopher Clark, Chapter 7

Trustee (Trustee), for summary judgment to deny the plaintiff's claims for declaratory relief affirming the validity of a post-confirmation contract between the plaintiff, Michael Blumenthal (Mr. Blumenthal) and Fred T. Hiller (Debtor or Hiller); for injunctive relief to prevent the Trustee from taking actions inconsistent with the contract; and for breach of contract based upon the Trustee's repudiation of the contract. The parties have briefed the issues and the Court has reviewed the adversary proceeding file and taken judicial notice of the underlying case files.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157.

The relevant facts of this matter are as follows. The Debtor and Mr. Blumenthal entered into a post-confirmation contract which was to resolve several years of litigation between the parties. The litigation began in 1987 when Mr. Hiller commenced an action against Mr. Blumenthal arising from their dealings in two real estate partnerships, Tower 80 and Tower 64. Mr. Blumenthal denied liability to Mr. Hiller and asserted counterclaims. During the trial on the matter, Mr. Hiller filed a petition for relief under Title 11 of the Bankruptcy Code. After obtaining relief from the automatic stay, the trial was concluded and a money judgment entered in favor of the Debtor for approximately $2 million (that figure was amended to $1.2 million). The state court also ordered the Debtor to sell his interest in the Tower 64 partnership to Mr. Blumenthal for $165,000. There was an appeal and cross-appeal of the decision.

The judgment in the state court action was listed as an estate asset. The confirmed plan of reorganization contemplated the full payment of the Debtor's debts. The plan was to have been funded in major part by the liquidation of the Debtor's interest in the Tower 64 partnership and by his judgment against Mr. Blumenthal. The disclosure statement provided that the Debtor would "continue to pursue his suit against Michael Blumenthal to conclusion or settlement regarding the judgment entered by the Arapahoe County District Court." The confirmed plan provided that "the Debtor will pursue collection of the judgment and will take all actions deemed necessary to preserve the judgment on reconsideration, appeal, or otherwise." [1]

In December of 1990, Messrs. Hiller and Blumenthal entered into an agreement to settle the state court action. The initial agreement was subsequently modified by an agreement dated February 1, 1991 (Settlement). The Settlement provided that the $1.2 million judgment in favor of the Debtor, the Debtor's right to have his interest in Tower 64 purchased for $165,000 and the corresponding charging order against Blumenthal's Tower 64 partnership interest were exchanged for dismissal of the appeal and for approximately $161,000 to be paid by Blumenthal to Hiller or the estate upon the sale of the Tower 64 property. Pursuant to the Settlement, they executed and submitted a "Satisfaction of Judgment and Dismissal of Appeal" to the Colorado Court of Appeals. The court rejected the document because it was not acknowledged.

On January 31, 1991, Tower 64 Limited Partnership filed for Chapter 11 relief. It scheduled the partnership real estate asset as being worth $12 million with debts of $4.8 million. Under Tower 64's proposed plan of reorganization however, the property will be listed for sale at $5.6 million, with a 7% broker's commission.

Hiller's former attorneys in the state court litigation (who are creditors in this case) objected to the dismissal of the appeal. In the bankruptcy court they filed a motion to interpret the amended plan and to void the settlement. Judge Matheson denied the motion to void the settlement as it requested declaratory relief which required the commencement of an adversary proceeding.[2] They also obtained a stay

---

1. The disclosure statement was approved on March 16, 1990 and the plan of reorganization was confirmed on June 1, 1990.

2. At the hearing on the motion to void the Settlement, Judge Matheson specifically stated that he would not rule on an interpretation of the plan since it was not properly before him.

from the Colorado Court of Appeals pending the resolution of this complaint.

The same former attorneys filed a motion to convert this case to a Chapter 7 proceeding. The motion was granted on October 2, 1991. The Debtor subsequently filed amended schedules to list debts incurred after confirmation and before conversion.

The Trustee requests summary judgment on several grounds. The Trustee claims the Settlement is not binding upon the Trustee and the estate. He claims the Settlement is illusory and lacking in consideration. Alternatively, the Trustee argues the Settlement should be set aside as an unauthorized post-petition transfer pursuant to 11 U.S.C. § 549. In support of the argument the Trustee maintains that the plan did not revest the judgment with the Debtor. Further, since the funding of the plan depended in large part upon the judgment, there was no authority for the Debtor to enter into a settlement which rendered plan payments impossible. Finally, the Trustee argues that neither federal nor state law will permit the use of the Court's equitable powers "to promote unjust results for unfair purposes".

Conversely, Mr. Blumenthal maintains that the Trustee is not entitled to summary judgment. First, he asserts that Section 549 does not allow the Agreement to be set aside. He contends that the court approval of the disclosure statement and plan constituted court authorization for Hiller to settle the Blumenthal litigation. He argues that the judgment revested in the Debtor and all parties in interest knew it might not be collectable. In addition, the Plaintiff maintains that the Trustee is barred by *res judicata* and collateral estoppel from raising arguments which were raised or could have been raised prior to confirmation. Lastly, he asserts that because settlements are favored, the Agreement should be upheld in the absence of fraud, mistake or bad faith.

■ In order to grant summary judgment, the material submitted to the Court must "show that there is no genuine issue as to any material facts and that the mov-

ing party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) as incorporated in Fed.R.Bankr.P. 7056. Summary judgment is not appropriate when there is a dispute over facts that might affect the suit's outcome under governing law. *Carey v. U.S. Postal Serv.*, 812 F.2d 621 (10th Cir.1987). The Court is required to review the record, pleadings and inferences in a light most favorable to the party opposing the motion. *E.g., Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir.1988).

The first question is whether the Trustee, who was appointed after the post-confirmation conversion of the Debtor's chapter 11 proceeding, is entitled to summary judgment on the grounds that the post-confirmation Settlement can be set aside under 11 U.S.C. § 549.

■ The relevant portion of Section 549 allows a trustee to avoid transfers of estate property which occur after the commencement of the case and are not authorized by either the Code or the court. It applies only to property of the estate and it does not apply where the court has authorized the transfer of the property. *Vogel v. Russell Transfer Inc.*, 852 F.2d 797 (4th Cir.1988). In a chapter 11 case, absent contrary provisions in the plan, upon confirmation title to the estate property revests in the debtor with normal ownership rights. *E.g., In re Ford*, 61 B.R. 913 (Bankr. W.D.Wis.1986); *United States v. Redmond (In re Westholt Manufacturing, Inc.)*, 36 B.R. 932 (D.Kan.1984); *Vogel v. Russell Transfer, Inc. (In re Russell Transfer, Inc.), supra; see* 11 U.S.C. § 1141(b). Accordingly, a chapter 7 trustee cannot use Section 549 to recover property which had revested in the debtor and was transferred post-confirmation and pre-conversion. *In re Ford, supra; Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458 (6th Cir.1991).

■ The confirmed plan revested the Blumenthal judgment in the Debtor. Previously, the Blumenthal judgment was a claim of the estate. However, according to the terms of the confirmed plan, the judgment, subject to certain restrictions to pur-

sue and preserve it, revested in the Debtor and was no longer property of the estate at the time the Settlement was reached. Since the judgment was not property of the estate at the time of the Settlement, the Trustee cannot avoid the Settlement under Section 549.

■ The Court will now consider whether the Trustee is barred from taking any action to vitiate the Settlement based upon the *res judicata* effect of the order confirming the plan. In the case of *Paul v. Monts (In re International Plastics, Inc.)*, 906 F.2d 1468 (10th Cir.1990), the Tenth Circuit discussed two relevant issues for this inquiry: the binding effect of a confirmed plan and authorized actions taken thereunder. First, the court noted that "confirmation of a plan also binds creditors and other parties in interest even if such entities have not accepted the plan." *Id.* at 1471, citation omitted. The court also stated, "[t]he trustee, as successor to the debtor in possession, is bound by his predecessor's authorized actions." *Id.* at 1473, citation omitted. Thus, based upon the *Paul* case, a post-confirmation conversion trustee is bound by any court authorized action of the debtor.

The Trustee offers the case of *Bank of Louisiana v. Pavlovich (In re Pavlovich)*, 952 F.2d 114 (5th Cir.1992), as support for his argument that he is not bound by *res judicata* or collateral estoppel in this matter. There the Fifth Circuit examined an analogous situation relating to a post-confirmation, pre-conversion creditor's ability to object to the discharge or dischargeability of a debtor. The court determined that the bank which lent money to the debtor both pre- and post-confirmation was precluded from objecting to the discharge or dischargeability of any pre-confirmation debt based upon the debtor's pre-confirma-

tion conduct as those matters could have been raised prior to confirmation. However, the court ruled:

> [C]reditors of the putatively reorganized debtor who find themselves victimized by post-confirmation acts that would justify revocation of the debtor's discharge are not prevented by § 348(d) from asserting such a claim upon conversion to Chapter 7.[3]

By analogy the trustee maintains that a post-confirmation, post-conversion trustee should scrutinize the debtor's post-confirmation acts and avoid any unauthorized transactions.

■ In the instant case, Mr. Hiller appears to have exceeded his authority under the plan in the post-confirmation Settlement. Pursuant to the plan, Mr. Hiller was allowed to serve as the party to "pursue collection of the judgment …," and "…, take all actions deemed necessary to preserve the judgment on reconsideration, appeal or otherwise." That arrangement is consistent with the provisions of Section 1123(b)(3)(B).[4] Notwithstanding that the disclosure statement revealed it was possible the judgment could become uncollectible and might be settled, the plan did not give the Debtor the right to enter into a settlement agreement for less than the amount of the judgment. Such a settlement would be inconsistent with the pursuit and preservation of the judgment. The plan language controls whenever there is a conflict between the disclosure statement and plan. *E.g., generally, In re AOV Indus., Inc.*, 792 F.2d 1140, 1153 (D.C.Cir. 1986). Although the judgment revested in the Debtor under the terms of the confirmed plan, the plan established the parameter of Mr. Hiller's power to dispose of that asset. Furthermore, based upon the

---

**3.** Section 348 deals with the effect of conversion. Subsection (d) specifically provides:

A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1102, 1307, or 1208 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim has arisen immediately before the date of the filing of the petition.

**4.** Section 1123(b)(3) allows for a plan to provide for "(A) the settlement or adjustment of any claim or interest belonging to the debtor or the estate; or (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest."

Court's retained jurisdiction for the entry of orders in aid of consummation of the plan, the Settlement should have been subject to creditor review and court approval. *See* Fed.R.Bankr.P. 9019.[5]

The Court finds that the Debtor exceeded the scope of his authority by settling the judgment for less than the full amount without further Court and creditor review. Consequently, the Trustee is not barred by *res judicata* from seeking to undo the Settlement and investigating the Debtor's unauthorized post-confirmation conduct. Furthermore, applying the rationale of *Pavlovich*, the Court finds that the Trustee has the obligation to assert the rights of the new post-confirmation creditors listed on the Debtor's amended schedules. This Court cannot sanction a policy which provides protection to a post-confirmation Debtor's unauthorized acts which detrimentally impact those new creditors.[6]

As a matter of law the Court should deny Mr. Blumenthal's second claim for relief. The Settlement does not appear valid at least as to the new creditors and the Trustee, and possibly as to all creditors.[7] Consequently, Mr. Blumenthal's second claim and request for an injunction against the Trustee is denied to the extent that the Trustee will not be prevented from taking actions inconsistent with the Settlement and to avoid it.

■ There appear to be factual questions relating to the alternative methods by which the Settlement may be avoided pursuant to Sections 547, 548 and 105. Moreover, the equitable arguments for avoidance are only properly considered after the legal remedies have been exhausted. Thus, the Court denies the Trustee's request for a declaratory judgment that the Settlement is invalid.

■ The final claim for relief involves the breach of contract claim against the Trustee. The resolution of the Trustee's right to attempt to avoid the Settlement may moot the final claim as presently pled, however, Mr. Blumenthal may have a claim against the estate for breach of the Settlement. Therefore, it is in the interest of judicial economy and does substantial justice to construe the final claim as a claim against the estate. Fed.R.Bankr.P. 7008(f).

■ The Trustee argues that there was no valid consideration for the Settlement such that there was no existing contract to repudiate or breach. The Trustee maintains that Mr. Blumenthal was under a pre-existing duty to pay the judgment and his agreement to pay less was not valid consideration. This argument ignores the fact that Mr. Blumenthal was willing to have the appeal of the judgment dismissed based upon the Settlement which does constitute valid consideration. *See Sentinel Petroleum Corp. v. Bernat*, 29 Colo.App. 109, 112, 478 P.2d 688, 689 (1970) (settlement of a lawsuit was valid consideration).

■ As for the modification of the Settlement, there appears to be a factual question of whether valid consideration for the modification existed. On its face, the modification does not provide anything for Mr. Hiller in exchange for the less favorable terms, however, a letter in the underlying case file indicates that Mr. Blumenthal agreed to try and stop the foreclosure of Tower 64 if Mr. Hiller would accept the less favorable terms.[8] Construing the facts in the light most favorable to Mr. Blumenthal, the Court concludes that there is a question of fact as to whether that or something else operated as consideration. Accordingly, the Trustee's request for sum-

---

**5.** The Settlement of the $1.2 million judgment and the $165,000 Tower 64 buy-out right in exchange for $161,000 effectively and significantly modified the payout under the confirmed plan without any notice to the parties in interest.

**6.** This case is distinguishable from those cases previously cited where the trustee was prohibited from recovering transfers by the post-confirmation debtor in a converted case where the transfers were consistent with the terms of the confirmed plan.

**7.** Applying Sections 348(d) and 547 or 548(a)(2), the transfer may be avoidable by the Trustee.

**8.** The Trustee was not previously notified that the Court would take judicial notice of this letter. However, the Trustee may raise his concerns, if any, under Fed.R.Evid. 201(e).

mary judgment invalidating any claim against the estate based upon a breach of the Settlement due to lack of valid consideration is denied. Based upon the foregoing, it is

ORDERED that the Court grants the Trustee's request for a summary judgment determination that the Trustee is not precluded from taking any actions to avoid the Settlement.

FURTHER ORDERED that the Trustee's requests for summary judgment determinations that the Settlement lacked valid consideration and is void are denied.

FURTHER ORDERED that on or before August 21, 1992, the parties shall file a status report with the Court on how they propose to proceed with the resolution of the alleged breach of contract claim and the proceeding to avoid the Settlement.