In re Fred T. HILLER III, Debtor.

H. Christopher CLARK,
Plaintiff–Appellee,

v.

Fred T. HILLER III, d/b/a Hiller Properties, d/b/a Hiller Construction, d/b/a Hiller Real Estate, Defendant–Appellant.

Civ. A. No. 93 N 772.
Bankruptcy No. 88 B 5775 CEM.
Adv. No. 92 1049 SBB.

United States District Court,
D. Colorado.

July 25, 1994.

Robert P. Padjen, Robert P. Padjen, Atty. at Law, Denver, CO, for plaintiff-appellee H. Christopher Clark, Trustee.

Lee M. Kutner, Rubner & Kutner, P.C., Denver, CO, for defendant-appellant Fred T. Hiller III, d/b/a Hiller Properties d/b/a Hiller Construction d/b/a Hiller Real Estate.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This is an appeal from an order and judgment of the United States Bankruptcy Court. The judgment was entered on December 10, 1992, after a trial concerning the trustee's objection to the debtor's discharge in bankruptcy under chapter 7 of the Bankruptcy Code, 11 U.S.C.A. §§ 701–766 (West 1993). The bankruptcy court ruled in favor of the trustee and barred the debtor's discharge pursuant to 11 U.S.C.A. § 727(a)(3) and 727(a)(4)(A) (West 1993). Jurisdiction is based on 28 U.S.C.A. § 158(a) (West 1993).

## FACTS

The background of the present dispute is set forth in the findings of fact adopted by the bankruptcy court in its published opinion, *In re Hiller*, 148 B.R. 606 (Bankr.D.Colo. 1992). On May 3, 1988, Appellant–Debtor, Fred T. Hiller, III ("Hiller"), filed a voluntary petition for reorganization pursuant to chapter 11 of the Bankruptcy Code, 11 U.S.C.A. §§ 1101–1174 (West 1993). *Hiller*, 148 B.R. at 608. Before filing his chapter 11 petition, Hiller owned and managed several development properties in his individual capacity and also held interests in various real estate partnerships. *Id.*

Approximately eighteen months after commencing his chapter 11 case, Hiller filed a proposed plan for reorganization pursuant to 11 U.S.C.A. § 1121 (West 1993). (*See generally* Am.Plan of Reorganization [filed Dec. 27, 1989] [hereinafter "Am.Plan"].) The

terms of the plan provided that Hiller's obligations would be satisfied through proceeds from the sale of his real property, the continued operation of various rental units, and the liquidation of certain non-exempt assets. (*Id.* § 9.1.) The bankruptcy court confirmed the plan for reorganization on June 1, 1990. *Hiller*, 148 B.R. at 608. Hiller failed to pay any of the approximately $2.5 million in unsecured claims allowed under the plan. *Id.* at 609.

On October 2, 1991, approximately sixteen months after the entry of the confirmation order, Hiller's bankruptcy case was converted to a proceeding under chapter 7. *Id.* at 608. Hiller's chapter 7 case involved the potential discharge of his pre-petition debts, as modified by the plan for reorganization, and any obligations incurred post-petition that were treated as pre-petition debts on conversion pursuant to 11 U.S.C.A. § 348(d) (West 1993). *Hiller*, 148 B.R. at 612 n. 8.

On January 21, 1992, the trustee filed an adversary proceeding naming Hiller as defendant and seeking a denial of Hiller's discharge under chapter 7. (*See generally* Compl. for Declaratory Relief and Denial of Discharge [filed Jan. 21, 1992].) The trustee's objection to the discharge was based, in significant part, on Hiller's conduct with respect to the chapter 11 matter and included: (1) Hiller's *pro se*, post-confirmation settlement of a $1.7 million judgment in his favor, which constituted an asset of his bankruptcy estate, for approximately $161,000; (2) Hiller's failure to fully disclose and accurately characterize his interest in a condominium property located in Coronado, California ("Coronado property"); and (3) Hiller's failure to adequately document a post-confirmation cash transaction with his wife. (*See id.*)

Following a trial concerning the adversary proceeding, the bankruptcy court interpreted Hiller's plan for reorganization as requiring full payment of the allowed unsecured claims. *Hiller*, 148 B.R. at 608. The bankruptcy court denied the discharge of Hiller's obligation to pay the unsecured claims, and his other remaining debts, after finding that Hiller engaged in the improper conduct alleged by the trustee. *See generally Hiller*, 148 B.R. at 613–16. Specifically, the bankruptcy

**248**

court denied Hiller's discharge pursuant to 11 U.S.C.A. § 727(a)(3) on the ground that Hiller concealed or otherwise failed to preserve certain information concerning his financial condition and business transactions. *Hiller,* 148 B.R. at 614. In addition, the bankruptcy court denied Hiller's discharge under 11 U.S.C.A. § 727(a)(4)(A) on the ground that Hiller knowingly and fraudulently made a false oath or account in, or in connection with, his bankruptcy case. *Hiller,* 148 B.R. at 615. The bankruptcy court, however, rejected the trustee's arguments for a denial of Hiller's discharge pursuant to 11 U.S.C.A. § 727(a)(2)(A) and 727(a)(4)(C). *Hiller,* 148 B.R. at 612–13, 615 n. 13.

The issues on appeal are whether the bankruptcy court properly held that (1) Hiller's chapter 11 plan required "substantial or full payment" of all the general, unsecured claims and (2) Hiller's obligations were not subject to discharge in the chapter 7 case pursuant to 11 U.S.C.A. § 727(a)(3) and 727(a)(4)(A) even where Hiller's improper conduct related, in significant part, to his chapter 11 proceeding. The order and judgment of the bankruptcy court is affirmed.

**ANALYSIS**

When a district court reviews a final order entered by a bankruptcy court, the conclusions of law made by the bankruptcy court are subject to de novo review. *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399–400 (10th Cir.1986). The findings of fact adopted by the bankruptcy court, however, must not be set aside unless they are clearly erroneous. Fed.R.Bankr.P. 8013; *see Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985); *In re Mullet,* 817 F.2d 677, 678 (10th Cir.1987). A finding is clearly erroneous when, in consideration of the record, it lacks logic or is otherwise implausible. *See Anderson,* 470 U.S. at 573–74, 105 S.Ct. at 1511–12. The reviewing court, therefore, must defer to the findings of the lower court if they are supported by the record. *See id.; In re Jones,* 966 F.2d 169, 172 (5th Cir.1992) (since the decision concerning a debtor's right to a discharge in bankruptcy is within the sound discretion of the bankruptcy court,

the reviewing court should interfere with that determination only in situations involving an abuse of discretion).

Hiller concedes that the bankruptcy court correctly determined that his discharge proceeding encompassed any debts or obligations relating to his plan for reorganization under chapter 11. *See Hiller,* 148 B.R. at 612 n. 8. (*See* Appellant's Br. at 5 [filed Aug. 16, 1993].) The bankruptcy court's conclusion is consistent with 11 U.S.C.A. § 1141(d) (West 1993), which provides that a confirmation order discharges the debtor from pre-confirmation debt and substitutes any obligations imposed by the plan for reorganization. *See In re Orange Tree Assoc.,* 961 F.2d 1445, 1448 (9th Cir.1992). Therefore, if the bankruptcy court correctly interpreted the plan as requiring full payment of the allowed unsecured claims, Hiller's obligation to pay the unsecured claims survived the chapter 11 confirmation order together with any debts or obligations incurred post-petition that were treated as pre-petition debts on conversion pursuant to 11 U.S.C.A. § 348(d). *See Hiller,* 148 B.R. at 612 n. 8. Hiller's debts, as modified and defined by the reorganization plan, would be subject to discharge in his chapter 7 case in the absence of an express bar to discharge under 11 U.S.C.A. § 727(a).

Hiller's argument that the bankruptcy court erred in denying his discharge in the chapter 7 case involves two primary analytical steps. First, Hiller argues that the bankruptcy court improperly construed his chapter 11 plan as requiring full payment of all the general, unsecured claims. Hiller maintains that this finding permitted the bankruptcy court to circumvent the confirmation order and thus "had the legal effect of resurrecting the previously discharged pre-petition debts or obligations in the Chapter 7 case." (Appellant's Br. at 5.) Second, Hiller asserts that the bankruptcy court erroneously precluded the discharge of his debts in the chapter 7 case under sections 727(a)(3) and 727(a)(4)(A). I disagree with each argument.

*1. Construing the Plan*

Hiller argues that the bankruptcy court erroneously determined that the plan

required full payment of the allowed unsecured claims. (Appellant's Br. at 5). In support of his argument, Hiller cites section 7.1 of the plan, which states:

> Class 9 consists of the claims of all allowed unsecured creditors of the Debtor. Class 9 is impaired pursuant to this Plan and the Class 9 claimants will be compensated and satisfied as set forth herein. The Class 9 claims shall accrue interest from the Confirmation Date to the date paid at the legal judgment rate. *The Class 9 claims shall be paid on a pro rata basis from the net proceeds,* as defined herein, derived from the sale of real property and non-exempt assets owned by the Debtor. The Class 9 claims will be paid no later than December 31, 1991.
>
> > (a) Net proceeds shall mean those proceeds which remain from real property sales after costs of sale, commissions, real property taxes and lien creditors are paid.

(Am.Plan § 7.1 [emphasis added].) Relying on the emphasized clause in section 7.1, Hiller argues that the plan required only a pro rata distribution to the unsecured creditors if, in fact, the plan generated any proceeds from the sale of his real property and non-exempt assets. (Appellant's Br. at 6.) According to the interpretation favored by Hiller, therefore, the plan did not require full payment of the unsecured claims. (*See id.*)

In solely relying on the term contained in section 7.1 providing for a pro rata distribution, Hiller ignores the effect of section 7.2 of the reorganization plan. Section 7.2 also concerns the treatment of unsecured creditors' claims and provides:

> The Debtor shall liquidate a sufficient amount of non-exempt assets to pay the Class 9 claims. In the event the liquidation does not produce sufficient proceeds to pay the Class 9 claims in full the claimants shall be entitled to their *pro rata* share of available proceeds.

(Am.Plan § 7.2.) Reading this term in isolation, the parties could not reasonably dispute the conclusion that the plan required full payment of any unsecured claims. However, Hiller focuses on the apparent inconsistency with the statement in section 7.1 pro-viding that "[t]he Class 9 claims shall be paid on a pro rata basis from the net proceeds," as a basis for arguing that the bankruptcy court improperly allowed the unsecured claims to survive the chapter 11 confirmation order. (Appellant's Br. at 6.)

Notwithstanding Hiller's argument that the two provisions create an inherent conflict, the bankruptcy court reasonably construed the terms as requiring full payment of the unsecured claims. A plain reading of section 7.2 suggests that the bankruptcy court could have concluded that the plan required full payment of the unsecured claims and only provided for a pro rata distribution in the event that the liquidation failed to generate proceeds sufficient to pay the unsecured claims in full. The statement in section 7.1 concerning the payment of unsecured claims on a pro rata basis, upon which Hiller relies, is consistent with this conclusion when interpreted in the context of section 7.2. *See Broderick Wood Prod. Co. v. United States,* 195 F.2d 433, 447–48 (10th Cir.1952) (different contractual provisions "should be construed in a manner to harmonize and give effect to all of them, if it is possible to do so without violating the plain language of the instrument or the clear purpose of the contracting parties").

Hiller also argues that the bankruptcy court improperly relied on the terms of his disclosure statement in construing the plan for reorganization. The disclosure statement, as Hiller concedes, required full payment of the unsecured claims. (*See* Appellant's Br. at 6; Reply Br. at 4 [filed Oct. 12, 1993].) Therefore, because Hiller maintains that the plan does not require full payment of the unsecured claims but concedes that the disclosure statement provides for full payment, he argues that the two documents create a conflict. According to Hiller, the terms of the plan should govern in this type of situation. (Appellant's Br. at 6–7; Reply Br. at 4–5.)

▪ Contrary to Hiller's assertion that the two documents include conflicting provisions, sections 7.1 and 7.2 of the plan are entirely consistent with the disclosure statement. In the section concerning the payment of unse-

cured claims, the disclosure statement provides in relevant part:

> Class 9 consists of the claims of all allowed non-contingent unsecured creditors of Debtor. Class 9 is unimpaired pursuant to the Plan. Class 9 claims will accrue interest from the Confirmation Date to the date paid at the legal judgment rate. *The Class 9 claims shall be paid on a pro-rata basis from the net proceeds derived from the sale of property owned by the estate. The Class 9 claims will be paid in full no later than December 31, 1991....*

(First Am. Disclosure Statement to Accompany Plan of Reorganization Dated December 27, 1989 at 21 [filed Mar. 8, 1990].) The first sentence emphasized in this provision is nearly identical to the clause in section 7.1 of the plan referring to a pro rata distribution of proceeds to the unsecured creditors. The second emphasized sentence corresponds with section 7.2 of the plan, which requires full payment of the allowed unsecured claims. Accordingly, while Hiller correctly states that the terms of the plan control in the event of a direct conflict between the plan and disclosure statement, *In re AOV Indus.*, 792 F.2d 1140, 1153 (D.C.Cir.1986), the documents in this case do not create a conflict. The bankruptcy court thus properly referred to Hiller's disclosure statement when interpreting the plan. *See id.; see also In re Hiller,* 143 B.R. 263, 265 (Bankr.D.Colo.1992) (when ruling on trustee's motion for summary judgment in a related proceeding, this bankruptcy court also found that "[t]he confirmed plan of reorganization contemplated the full payment of the Debtor's debts").

■ Hiller's argues, next, that the bankruptcy court improperly *revoked* the discharge of his obligations under the plan in violation of 11 U.S.C.A. § 1144 (West 1993). Section 1144 provides:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud....

11 U.S.C.A. § 1144. Hiller argues that once a plan under chapter 11 is confirmed, the resulting discharge may only be revoked under section 1144. *See In re Orange Tree Assoc.,* 961 F.2d at 1448. (Appellant's Br. at 7.) Accordingly, Hiller maintains that section 1144 operates as a time-bar in this case because no real party in interest asserted that he fraudulently procured the confirmation order under chapter 11 within 180 days after the entry of the order. (Appellant's Br. at 7–8).

Contrary to Hiller's argument, the bankruptcy court did not revoke the plan under chapter 11 and thereby resurrect his obligation to pay the unsecured claims. The bankruptcy court specifically stated:

> The Debtor's Chapter 11 discharge of prepetition debts and contractual obligations was not revoked, rescinded, or voided by the conversion to Chapter 7.... Nor was Debtor's discharge revocable pursuant to 11 U.S.C. § 1144.

*Hiller,* 148 B.R. at 612 n. 8. Instead, the bankruptcy court gave effect to Hiller's chapter 11 plan by determining that Hiller was required to pay the unsecured claims in full, absent a valid discharge of his obligations under chapter 7.

Because the bankruptcy court reasonably interpreted Hiller's plan as requiring full payment of the unsecured claims, its finding was not clearly erroneous and will not be disturbed on appeal. *See* Fed.R.Bankr.P. 8013; *Anderson,* 470 U.S. at 573–74, 105 S.Ct. at 1511–12; *In re Mullet,* 817 F.2d at 678. Accordingly, I must now address Hiller's contention that the bankruptcy court erred in denying his discharge under chapter 7.

*2. Denial of Discharge Under 11 U.S.C.A. § 727(a)(3)*

The bankruptcy court barred Hiller's discharge under chapter 7 pursuant to section 727(a)(3). Section 727(a)(3) permits a discharge under chapter 7 unless:

> [T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was

justified under all of the circumstances of the case....

11 U.S.C.A. § 727(a)(3). This provision serves the statutory goal of fair dealing by requiring the debtor to furnish a satisfactory written record and accounting of his current financial condition and recent business transactions. *See In re Mathern,* 137 B.R. 311, 317 (Bankr.D.Minn.), *aff'd,* 141 B.R. 667 (D.Minn.1992).

In denying Hiller's discharge under this subsection, the bankruptcy court observed:

There is a curious and sometimes unexplained dearth of reliable written records, or complete absence of recorded information and reliable documentation.... Given the circumstances and the nature of the events and transactions involved, the absence of reliable recorded information is unjustified and essentially unexplained by the Debtor and his wife. This conclusion is reinforced still more in view of the Debtor's impressive and expansive experience in sophisticated business transactions and real estate development projects.

*Hiller,* 148 B.R. at 614.

The bankruptcy court cited several events in support of its determination that Hiller either (1) concealed· documents or existing recorded information or (2) failed to keep or preserve necessary financial and business information for the purpose of section 727(a)(3). *See id.* Specifically, the bankruptcy court found that Hiller engaged in substantial cash transactions with his wife without maintaining reliable documentation. *Id.* at 611–12, 614. In one instancè, Hiller failed to document the consideration that his wife ostensibly paid for a Uniflite boat in a post-confirmation sale. *Id.* at 611–12. Hiller failed to use the proceeds received from the sale of the boat to pay his obligations under the plan. *Id.* at 612. In addition, Hiller concealed unauthorized, post-petition, pre-confirmation deeds of trust in favor of his wife and failed to fully and accurately disclose information concerning his interest in the Coronado property in his disclosure statement. *Id.* at 610–11.

Another event supporting the bankruptcy court's denial of Hiller's petition for discharge involved Hiller's settlement concerning a substantial judgment rendered in his favor. On November 28, 1989, several months after Hiller filed his petition, the Arapahoe County District Court entered a judgment in favor of Hiller and against Michael Blumenthal, Hiller's former business partner. *See id.* at 609–10. The $1.7 million judgment against Blumenthal constituted an asset of Hiller's bankruptcy estate. *Id.* at 609. The plan provided that Hiller would pursue collection of the judgment against Blumenthal and take any actions necessary to preserve the judgment. *Id.* at 610. (*See* Am.Plan § 9.3.)

On February 1, 1991, after confirmation of his chapter 11 plan, Hiller, acting *pro se,* entered into a settlement with Blumenthal providing for the satisfaction the judgment, as well as an additional $165,567.40 in principal due from Blumenthal, for a total discounted settlement payment of $161,100. *Hiller,* 148 B.R. at 610. Hiller concealed the terms and conditions of his settlement with Blumenthal and even went so far as to withhold this information and the settlement documents from his attorney. *Id.* at 614–15. Based upon these and other events, the bankruptcy court denied Hiller's discharge pursuant to section 727(a)(3) on the ground that Hiller concealed or failed to preserve documentation regarding his financial condition and business transactions. *Id.* at 614. The bankruptcy court noted, moreover, that several of these circumstances, standing alone, could bar Hiller's discharge under section 727(a)(3). *Id.* at 614 n. 11.

■ The bankruptcy court's conclusion of whether a debtor concealed or failed to maintain relevant information for the purpose of section 727(a)(3) is a question of fact. *See Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 251 (4th Cir.1987) (stating an analogous rule in the context of findings under section 727[a][4][A] ). The bankruptcy court's finding of fact with respect to this matter thus may not be set aside on appeal unless it is clearly erroneous. *Id.; Anderson,* 470 U.S. at 573–74, 105 S.Ct. at 1511–12; *In re Mullet,* 817 F.2d at 678. In this case, the record supports the bankruptcy court's finding that Hiller concealed or failed

to preserve important information concerning his financial condition and business transactions. Accordingly, the bankruptcy court properly denied Hiller's petition for discharge under section 727(a)(3).

### 3. Denial of Discharge Under 11 U.S.C.A. § 727(a)(4)(A)

In addition to its ruling under section 727(a)(3), the bankruptcy court denied the discharge of Hiller's debts and obligations pursuant to section 727(a)(4)(A). *See Hiller,* 148 B.R. at 615. This provision precludes a discharge if the debtor knowingly and fraudulently made a false oath or account "in or in connection with the case." 11 U.S.C.A. § 727(a)(4)(A). The purpose of section 727(a)(4)(A) is to assure the availability of adequate information to persons interested in the administration of the bankruptcy estate without the necessity of investigations to determine the truth of the information provided. *In re Armento,* 127 B.R. 486, 490–91 (Bankr.S.D.Fla.1991). Although the objecting party must establish the actual fraudulent intent of the debtor under section 727(a)(4)(A), the debtor's intent may be inferred from his conduct or the particular circumstances of the case. *In re Calder,* 907 F.2d 953, 955–56 (10th Cir.1990); *In re Armento,* 127 B.R. at 491.

In this case, the bankruptcy court concluded that Hiller made material misrepresentations and omitted important information "in such a reckless and cavalier fashion that his conduct easily qualified as making a false oath and account in, and in connection with, this case." *Hiller,* 148 B.R. at 615. In reaching this conclusion, the bankruptcy court cited several examples of improper conduct by Hiller in connection with his bankruptcy case. According to the bankruptcy court, Hiller failed to: (1) fully disclose the peculiarities and legal deficiencies concerning his title to the Coronado condominium property; (2) disclose that his wife claimed an encumbrance on, or an interest in, another person's lien against the Coronado property; (3) reveal his wife's secured claim against his bankruptcy estate or his grant of two post-petition, pre-confirmation deeds of trust executed in favor of his wife; and (4) accurately

reflect the value of certain real property and associated obligations. *Id.* at 616. The bankruptcy court also determined that Hiller's interim reports, which he filed under oath, were "incomplete, ambiguous, and misleading" and "only provided a cover for [Hiller] to argue that he disclosed certain matters." *Id.*

The bankruptcy court summarized its findings by stating:

> The pattern of conduct by this Debtor from pre-petition, to the onset of the case, through disclosure statements, confirmation and post-confirmation activities, and his demeanor and credibility at trial, convince the Court that this Debtor acted, over time, to mislead and defraud his creditors and misused the bankruptcy system.

*Id.* at 615. The bankruptcy court therefore held that Hiller's conduct precluded a discharge in bankruptcy pursuant to section 727(a)(4)(A) because he made a false oath or account in, and in connection with, his bankruptcy case. *Id.* at 615–16.

The determination of whether a debtor has made a false oath or account within the meaning of section 727(a)(4)(A) is a question of fact. *Williamson,* 828 F.2d at 251. Because the record supports the bankruptcy court's conclusion that Hiller knowingly and fraudulently made a false oath or account in connection with his case, the bankruptcy court did not clearly err in denying Hiller's petition for discharge under section 727(a)(4)(A). Therefore, the finding of the bankruptcy court with respect to this matter will not be disturbed on appeal.

In addition, it is irrelevant that a significant part of Hiller's fraudulent conduct and failure to maintain appropriate records occurred in relation to his chapter 11 case. Section 727(a)(3) does not contain a restriction that would bar this determination and section 727(a)(4) specifically refers to improper conduct committed knowingly and fraudulently "in *or in connection with* the case." *See* 11 U.S.C.A. § 727(a)(3)–(4) (emphasis added); *see also In re Mathern,* 137 B.R. at 320 (in order for complaining party to successfully challenge discharge under section 727(a)(4)(A), he must prove that the debtor made a false oath "in connection with his

bankruptcy case"). These provisions do not require that the conduct supporting the denial a debtor's discharge to occur only in specific relation to his chapter 7 proceeding.

### 4. Conclusion

The bankruptcy court reasonably interpreted Hiller's plan for reorganization under chapter 11 as requiring full payment of the general, unsecured claims. The bankruptcy court further properly denied the discharge of Hiller's obligations under 11 U.S.C.A. § 727(a)(3) and 727(a)(4)(A). Since Hiller has failed to identify any aspect of the bankruptcy court's decision requiring reversal, it is therefore

**ORDERED** that the order and judgment of the United States Bankruptcy Court is **AFFIRMED.**

### JUDGMENT

PURSUANT TO and in accordance with the Order and Memorandum of Decision signed July 25, 1994, by the Honorable Edward W. Nottingham, U.S. District Judge, it is

ORDERED that the order and judgment of the United States Bankruptcy Court is AFFIRMED.